Charles Edward JACKSON, Appellant,

v.

UNITED STATES of America, Appellee.

No. 19805.

United States Court of Appeals Fifth Circuit.

Jan. 9, 1963.

Rehearing Denied Feb. 28, 1963.

---

Willie E. Griggs, Fort Worth, Tex., for appellant.

Barefoot Sanders, U. S. Atty., Robert B. Ward, Asst. U. S. Atty., Dallas, Tex., for appellee.

Before RIVES, JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

We are confronted on this appeal with two principal questions. One concerns the admissibility of testimony by Customs Agents as to statements allegedly made by the defendant concerning events subsequent to those upon which his prosecution and conviction were based. The other question is the claim that the trial court erred in charging the jury that the defendant's guilt or innocence would depend primarily on whether he knew the package he *delivered* contained heroin. Also asserted on brief and argument, though not specifically raised by formal assignment of error, is the claim that defendant was, at most, merely an agent so he cannot be found guilty. We find no errors in the trial and affirm the judgment of the court below.

The defendant was tried and convicted of knowingly selling and facilitating the sale of heroin knowing the same to have been illegally imported into the United States in violation of 21 U.S.C.A.

§ 174.[1] The indictment contained four counts, the substance of Count 1 being set out in note 1. Count 2 charged the defendant with selling the same heroin "not in pursuance of a written order * * * ." Counts 3 and 4 charged H. N. White (a codefendant initially) with narcotics violations occurring at a date subsequent to that involved in the counts against the defendant Jackson. White pleaded guilty to the charges against him and turned prosecution witness. The charges in Count 2 against the defendant Jackson were dismissed.

The evidence is conflicting, particularly between the testimony of the prosecution witness White and the defendant Jackson who took the stand in his own behalf. Chiefly, the facts were these: The defendant and White were friends. White had a girl friend who turned out to be an informer-special employee of the Narcotics Bureau. She was an admitted narcotics addict and was used frequently by the Bureau to facilitate convictions of her suppliers.[2] On November 11, 1961, she and a Narcotics Agent went to a local grocery store in Ft. Worth, Texas where she placed a telephone call to White's house which was some 20 blocks away. Shortly thereafter the defendant drove up to the grocery store in White's car. The Agent (accompanied by the girl) and two other agents who were parked in the vicinity each testified that the girl approached the car at the curb, engaged the defendant in conversation, handed him something through the window of the car, and received something from him in return. Defendant drove off and the girl returned to the grocery store and delivered two "papers" of heroin to the Agent waiting therein. A pre and post search of the special employee was made by a police matron to negative possession of other narcotics.

White and the defendant both testified that on the day in question White drove to the defendant's house, picked him up and they returned to White's house where White received a phone call. White testified that it was the defendant who owned the narcotics and that defendant had brought the heroin with him from his (the defendant's) house to White's house. The defendant testified to the contrary. He swore that he did not have the heroin. It was defendant's story that shortly after the telephone call which White received, White asked the defendant if he would deliver something for him to the girl and bring back to White whatever money the girl gave to defendant.[3] The defendant agreed to do this and thus committed the acts which led to his conviction.

■ A careful reading of the record of the trial indicates to us that the defendant was given a fair trial and his rights were scrupulously guarded. The evidence including that offered by defendant was so heavily stacked against him, and so free of any significant conflict, that it was certainly permissible for a jury to return a verdict of guilty.

---

1. The indictment charged that on or about November 11, 1961, the defendant and H. N. White did " * * * knowingly sell and facilitate the sale of approximately 66.3 milligrams of heroin hydrochloride to a special employee of the Bureau of Narcotics, which * * * had been imported into the United States contrary to law and the defendants knew it to have been imported into the United States contrary to law."

2. The Government proved that she had died prior to the trial.

3. The trial court in the charge assumed that defendant was contending that while he was aware that he agreed to, and did,

make a delivery of a package, he did not know that it contained narcotics. Defendant's direct testimony throws doubt on that assumption:

"Q. On or about November 11, 1961, tell us whether or not you delivered a quantity of narcotics to one Thelma Hayes?

"A. Yes, I did.

* * * * * * *

"Q. Was that your only connection with this package, when he gave it to you and asked you to deliver it to her?

"A. Yes, sir.

"Q. Now you did know what it was?

A. Yes, Sir."

However, the defendant specifically urges that two errors were committed by the trial judge. The first is that he was prejudiced by the admission of testimony of two Customs Agents from El Paso, Texas. On direct examination, the defendant testified that he had been convicted in 1957 for possession of marihuana and at that time he regularly used, but was not addicted to, narcotics. However, he categorically denied being an addict on November 11, 1961 or of having anything to do with narcotics from the time of the 1957 conviction to the present trial. His story was that he was reformed of this vice. On the Government's rebuttal, the two Customs Agents testified that a few weeks after November 11 and prior to the defendant's arrest, the defendant, while in an El Paso hospital, had made statements to them concerning a narcotics deal he had recently transacted in Mexico and also that he had already had two "shots" that day and had a $50 a day habit. Over the objection of the defendant, this testimony was admitted. But the court carefully limited its use. In the charge, the court stated that the testimony of the Customs Agents was "admitted because the defendant had gone into evidence to the effect that he was not a user of narcotics. Such evidence was permitted in rebuttal of his testimony on that matter. The evidence so admitted is limited to that purpose. It does not show he is guilty of [the offense charged]." We believe the evidence was properly admitted for this purpose.

How this evidence came into the case is highly significant. The Government had first offered it as a part of its case in chief. After first hearing the precise evidence—not just a shorthand preview of it by a proffer in counsel's words—out of the presence of the jury, the court denied admissibility. His ruling, however, recognized that it would be reconsidered when or as developments warranted.

In the face of these precise words—that Jackson was a narcotics user with a $50 a day habit—the defendant in his opening direct testimony testified categorically that he no longer used or dealt in, or with, narcotics.

This action of the court was certainly justified under Walder v. United States, 1954, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503.[4] In that case, the defendant had testified on direct examination that he had never dealt in any way with narcotics. The court said it was proper for impeachment purposes for the Government on rebuttal to produce evidence of prior narcotic dealings, even though such evidence admittedly had been procured through illegal search and seizure. In that respect our case is even stronger since the jury could conclude that the defendant here voluntarily made the statements to the Customs Agents.

The fact that such statements were made shortly after November 11 is of no significance. Cf. United States v. Stirone, 3 Cir., 1958, 262 F.2d 571, reversed on other grounds, 1960, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252. Citing the Stirone case, the defendant contends that the only relevancy of this evidence was to show his propensity to commit the crime involved and consequently, being obviously inadmissible for this purpose, it was not admissible at all. But the record reveals that this evidence was admitted under careful instructions, not to show propensity, but for the limited purpose of rebuttal of the defendant's specific testimony.

It must be remembered that defendant himself injected this idea that as a former violator he had now reformed and neither needed, used, or handled narcotics. This was—or at least his counsel could have thought so—a highly significant and persuasive fact. It was relevant to his theory that he was simply doing a favor for White or the girl or both. It bolstered up his implied defense that

4. Further support is found in Ferrari v. United States, 9 Cir., 1957, 244 F.2d 132, cert. denied sub nom., 1957, 355 U.S. 873, 78 S.Ct. 125, 2 L.Ed.2d 78; Brady v. United States, 9 Cir., 1945, 148 F.2d 394.

he had no purpose of his own to serve by performing this errand. He knew that, acknowledging as he had to, the fact of his former conviction, the jury might be skeptical of his story of innocence unless he persuaded them that he had foregone his prior ways.

Consequently, without now determining whether the evidence was admissible as initially proffered, the defendant voluntarily opened the door by offering evidence relevant to his defense and the questioned testimony of the Customs Agents was a direct rebuttal of it. Whether a distinction should be made as between facts elicited on *cross,* rather than *direct,* examination as some cases seem to emphasize [5] and text writers criticize,[6] it was certainly within the trial judge's discretion to receive this evidence under this limitation. Under the circumstances of this record, it satisfied at least one of the accepted criteria for not treating it as a so called "collateral" matter. McCormick, Evidence §§ 36, 47 (1954).

■ The defendant next contends that there was error in the trial court charging the jury that "if you believe from the evidence beyond a reasonable doubt that the defendant Jackson took the heroin to her [the special employee], collected the money from her, and knew that it was heroin he was delivering, then he would be guilty under Count 1 of this indictment." He complains that this charge does not distinguish between the crime of sale (with which defendant is charged) and the crime of possession. There is no merit to this when the charge is considered as a whole. The court made clear in many ways that to convict the jury had to find that there was a sale and that defendant, knowing that a sale was being made, did one or more acts which facilitated it. The jury could not possibly have concluded that a mere transfer of possession—i. e., a delivery —was sufficient. The portion objected to was but a part of the instructions by which the court was isolating the various subsidiary factual issues going to establish whether defendant knowingly made or facilitated a sale of narcotics.

■■ Defendant also asserts that on the basis of a number of cases,[7] he was a mere agent and cannot therefore be held guilty. But this misapprehends the whole idea of those decisions. As we pointed out in Coronado v. United States, 5 Cir., 1959, 266 F.2d 719, the question is "whether the accused acted as a participant in the sale on behalf of the buyer or on behalf of the seller." No case has yet held the agent of the seller excused by the act of a knowing delivery.

On White's story defendant was more than an agent, he was the active principal. On defendant's story and by his own words, he agreed to deliver to the girl, in return for money to be paid by her, a package which the jury could conclude he knew contained narcotics. That was facilitating a sale made by White, not merely a purchase made by the girl. As agent of White, the seller, these cases afforded no defense. See Walker v. United States, 5 Cir., 1961, 285 F.2d 52; Washington v. United States, 5 Cir., 1960, 275 F.2d 687.

We find no error in the trial below. The evidence was quite sufficient to support the jury's verdict. There it ends.

Affirmed.

5. United States v. Masino, 2 Cir., 1960, 275 F.2d 129; United States v. Sweeney, 3 Cir., 1959, 262 F.2d 272.

6. See McCormick, Evidence § 47 (1954).

7. Henderson v. United States, 5 Cir., 1959, 261 F.2d 909; Adams v. United States, 5 Cir., 1955, 220 F.2d 297; United States v. Sawyer, 3 Cir., 1954, 210 F.2d 169.