Wayne Carl **COLEMAN,**
Petitioner-Appellant,

v.

Walter D. **ZANT,** Warden, Georgia Diagnostic and Classification Center,
Respondent-Appellee.

No. 82–8310.

United States Court of Appeals,
Eleventh Circuit.

June 10, 1983.

Joseph M. Nursey, Millard C. Farmer, Kenneth Rose, Atlanta, Ga., for petitioner-appellant.

Nicholas G. Dumich, Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.

Before JOHNSON and ANDERSON, Circuit Judges, and COLEMAN *, Senior Circuit Judge.

R. LANIER ANDERSON, III, Circuit Judge:

In this capital case, petitioner Wayne Carl Coleman appeals from the federal district court's order denying his petition for habeas corpus relief. On September 4, 1973, a Seminole County grand jury indicted Coleman, Carl J. Isaacs, George Elder Dungee, and Billy Isaacs on six counts of murder. Some three months later, Billy Isaacs entered a guilty plea to armed rob-

bery and burglary. He was sentenced to a forty-year prison term. In January 1974, Coleman and the two remaining defendants were tried separately, convicted, and sentenced to death by electrocution.[1]

The Supreme Court of Georgia affirmed Coleman's convictions and sentences, and the United States Supreme Court subsequently denied Coleman's petition for writ of certiorari. *Coleman v. State,* 237 Ga. 84, 226 S.E.2d 911 (1976), *cert. denied,* 431 U.S. 909, 97 S.Ct. 1707, 52 L.Ed.2d 394 (1977). Coleman filed a state habeas corpus petition in the Superior Court of Tattnall County. The superior court held hearings on July 27, 1979 and January 25, 1980. On June 13, 1980, the superior court denied Coleman's habeas corpus petition. On October 31, 1980, the Supreme Court of Georgia denied Coleman's application for a certificate of probable cause to appeal. The United States Supreme Court denied Coleman's second petition for writ of certiorari. *Coleman v. Balkcom,* 451 U.S. 949, 101 S.Ct. 2031, 68 L.Ed.2d 334 (1981). At this point, Coleman filed for habeas corpus relief in the United States District Court for the Middle District of Georgia. The district court denied the petition. *Coleman v. Zant,* No. 81–42–THOM (M.D.Ga. Mar. 11, 1982). In answer to Coleman's habeas corpus petition, respondent conceded that Coleman had exhausted available state remedies for the issues raised in his petition. Record at 49.

Among the several issues raised on this appeal, petitioner contends that the federal district court erred in denying his request for discovery and an evidentiary hearing on the question of whether pretrial publicity and the community's atmosphere were so prejudicial and inflammatory that the trial court's refusal to grant petitioner's motion for a change of venue deprived him of his constitutional rights.[2] In his petition for

---

* Honorable James P. Coleman, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. Additional facts are noted in *Coleman v. State,* 237 Ga. 84, 226 S.E.2d 911, 913–14 (1976), *cert. denied,* 431 U.S. 909, 97 S.Ct. 1707, 52 L.Ed.2d 394 (1977).

2. Petitioner also requested an evidentiary hearing on two other issues, namely, whether petitioner was denied effective assistance of counsel and whether the special prosecutor's participation in the trial deprived petitioner of his constitutional rights.

habeas corpus, petitioner requested the district court to conduct an evidentiary hearing so that petitioner could prove the facts alleged in the petition. Record at 41. The district court decided that an evidentiary hearing was unnecessary. Record at 239. Petitioner also filed a motion for discovery. Record at 60. In this motion, petitioner indicated that he would use depositions obtained in discovery as direct evidence and as evidence of the need for an evidentiary hearing. The district court did not directly respond to this motion. In its opinion denying habeas relief, the district court said that petitioner had had full and adequate state court hearings relating to the petition's allegations. Record at 239.

We have reviewed the record and it is clear that petitioner is entitled to an evidentiary hearing on the change of venue issue. We therefore remand to the district court for an evidentiary hearing. In the interests of judicial economy and the expeditious handling of this case, we will retain jurisdiction. The district court is instructed to certify its findings and the record of its proceedings on remand to us within 60 days of the issuance of this opinion. *See Spivey v. Zant,* 661 F.2d 464, 478 (5th Cir.1981) (Unit B), *cert. denied,* —— U.S. ——, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982); *Harris v. Oliver,* 645 F.2d 327, 331 (5th Cir.1981) (Unit B), *cert. denied,* 454 U.S. 1109, 102 S.Ct. 687, 70 L.Ed.2d 650 (1981).[3]

## I. CHANGE OF VENUE

■ The Fourteenth Amendment's due process clause safeguards a defendant's Sixth Amendment right to be tried by "a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). When prejudicial pretrial publicity or an inflamed community atmosphere preclude seating an impartial jury, due process requires the trial court to grant a defendant's motion for a change of venue, *Rideau v. Louisiana,* 373

U.S. 723, 726, 83 S.Ct. 1417, 1419, 10 L.Ed.2d 663 (1963), or a continuance, *Sheppard v. Maxwell,* 384 U.S. 333, 362–63, 86 S.Ct. 1507, 1522–23, 16 L.Ed.2d 600 (1966). Ultimately, the question is whether a defendant's "trial was not fundamentally fair." *Murphy v. Florida,* 421 U.S. 794, 799, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975). Two standards guide analysis of this question. They are the "actual prejudice" standard and the "presumed prejudice" standard.

■ To find the existence of actual prejudice, two basic prerequisites must be satisfied. First, it must be shown that one or more jurors who decided the case entertained an opinion, before hearing the evidence adduced at trial, that the defendant was guilty. *Irvin v. Dowd,* 366 U.S. at 727, 81 S.Ct. at 1645. Second, these jurors, it must be determined, could not have laid aside these performed opinions and "render[ed] a verdict based on the evidence presented in court." *Irvin v. Dowd,* 366 U.S. at 723, 81 S.Ct. at 1643.

■ Prejudice is presumed from pretrial publicity when (1) pretrial publicity is sufficiently prejudicial and inflammatory, and (2) the prejudicial pretrial publicity saturated the community where the trials were held. *Rideau v. Louisiana,* 373 U.S. at 726–27, 83 S.Ct. at 1419–20; *Murphy v. Florida,* 421 U.S. at 798–99, 95 S.Ct. at 2035–36; *Mayola v. Alabama,* 623 F.2d 992, 997 (5th Cir.1980), *cert. denied,* 451 U.S. 913, 101 S.Ct. 1986, 68 L.Ed.2d 303 (1981); *see also Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965). As the Fifth Circuit has described the test, "where a petitioner adduces evidence of inflammatory, prejudicial pretrial publicity that so pervades or saturates the community as to render virtually impossible a fair trial by an impartial jury drawn from that community, '[jury]

---

**3.** In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all of the post-September 30, 1981, decisions of Unit B of the former Fifth Circuit. *Id.* at 34. *Cf. Bonner v. City of Prich-* *ard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

prejudice is presumed and there is no further duty to establish bias.'" *Mayola v. Alabama,* 623 F.2d at 997 (quoting in part from *United States v. Capo,* 595 F.2d 1086, 1090 (1979), *cert. denied,* 444 U.S. 1012, 100 S.Ct. 660, 62 L.Ed.2d 641 (1980)).

▆▆ Petitioner has the burden to show "essential unfairness," *Beck v. Washington,* 369 U.S. 541, 558, 82 S.Ct. 955, 964, 8 L.Ed.2d 98 (1962) (quoting *United States ex rel. Darcy v. Handy,* 351 U.S. 454, 462, 76 S.Ct. 965, 970, 100 L.Ed. 1331 (1956)), under either standard. The petitioner must "show that setting of the trial was inherently prejudicial or that the jury selection process of which he complains permits an inference of actual prejudice." *Murphy v. Florida,* 421 U.S. at 803, 95 S.Ct. at 2038. Given petitioner's allegations of "grave constitutional errors," *Townsend v. Sain,* 372 U.S. 293, 319, 83 S.Ct. 745, 760, 9 L.Ed.2d 770 (1963), regarding the trial court's denial of the motion to change venue, and given the fact that petitioner shoulders the burden to demonstrate these allegations, it cannot be doubted that petitioner is entitled to a full and fair opportunity to develop the facts material to this constitutional claim. We must determine whether or not the petitioner has had that opportunity and whether petitioner has made "an appropriate showing," *Harris v. Nelson,* 394 U.S. 286, 291, 89 S.Ct. 1082, 1086, 22 L.Ed.2d 281 (1969), for a federal evidentiary hearing.

## II. THE NEED FOR AN EVIDENTIARY HEARING

▆▆ *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), prescribes

the standards governing the question whether the federal district court must hold an evidentiary hearing in determining the merits of a habeas corpus petition of a person in state custody.[4] *Townsend* delineated six particularized circumstances which warrant an evidentiary hearing.[5] The fifth circumstance occurs when "the material facts were not adequately developed at the state court hearing." 372 U.S. at 313, 83 S.Ct. at 757.[6] To require the district court to hold an evidentiary hearing based on this fifth circumstance, petitioner must make a showing of two elements:

[F]irst, that a fact pertaining to his federal constitutional claim was not adequately developed at the state court hearing and that the fact was "material" (in the language of section (d)(3)) or "crucial to a fair, rounded development of the material facts" (in the language of *Townsend*); second, that failure to develop that material fact at the state proceeding was not attributable to petitioner's inexcusable neglect or deliberate bypass.

*Thomas v. Zant,* 697 F.2d 977, 986 (11th Cir.1983) (footnote omitted); *see Townsend v. Sain,* 372 U.S. at 317, 83 S.Ct. at 759.

▆▆ Petitioner has made the requisite showing of the first element of the *Townsend* standard. There are material facts which have not been adequately developed in the state court proceedings. Facts, or issues of fact, "refer to what are termed basic, primary, or historical facts: facts 'in the sense of a recital of external events and the credibility of their narrators ....'"

---

4. The habeas corpus statute, 28 U.S.C.A. § 2254(d) (West 1977), "allocates the burdens of proof once a *Townsend* hearing is deemed necessary." *Thomas v. Zant,* 697 F.2d 977, 984 (11th Cir.1983); *In re Wainwright,* 678 F.2d 951, 953 (11th Cir.1982); *Guice v. Fortenberry,* 661 F.2d 496, 501 (5th Cir.1981) (en banc).

5. *Townsend's* particularized holding stated:
[A] federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by

the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.
372 U.S. at 313, 83 S.Ct. at 757.

6. This circumstance has been codified in the habeas corpus statute. There it serves to rebut the presumption that state factual findings are correct. *See* 28 U.S.C.A. § 2254(d)(3) (West 1977).

*Townsend v. Sain,* 372 U.S. at 309 n. 6, 83 S.Ct. at 755 n. 6 (quoting *Brown v. Allen,* 344 U.S. 443, 506, 73 S.Ct. 397, 445, 97 L.Ed. 469 (1953) (opinion of Frankfurter, J.)); *see Hance v. Zant,* 696 F.2d 940, 946–47 (11th Cir.1983). The primary facts regarding petitioner's presumed prejudice claim concern the nature and scope of pretrial publicity and its effect on the community where petitioner was tried. As the record now stands, it is impossible to determine what kind of coverage emanated from local television and radio programs to which Seminole County residents were exposed. Because the record does not reveal the content of and audience for these radio and television programs, it is impossible to resolve the question whether prejudicial pretrial publicity saturated the community.[7]

Despite the absence of any factual development on television/radio news accounts, respondent argues that the facts relevant to the change of venue issue have been adequately developed. In support of this argument, respondent points to the pretrial hearings on the motion for a change of venue, the state habeas corpus hearings, and the voir dire transcript.

We have examined the transcripts of the state proceedings. Neither the pretrial hearings nor the state habeas hearings developed a well-rounded description of the nature of television/radio news accounts (whether prejudicial or not) and the audience for these programs in Seminole County. The pretrial hearings on the motion for a change of venue do not contain any evidence of the television and radio news programs about the case. The state habeas hearings contain two statements on this issue. The state editor of the Albany Herald testified that "the electronic media played . . . [the case] very high." Record, Exhibit No. 10, vol. I, at 164 [hereinafter cited as State Habeas Hearings]. Petitioner's trial counsel also testified that there was extensive radio and television coverage. *Id.* at 94. With these two conclusory statements standing alone, the state of this record does not provide an adequate basis to review petitioner's presumed prejudice claim, especially in light of the special concern about the impact of television coverage evidenced by the Supreme Court in *Rideau v. Louisiana,* 373 U.S. 723, 726, 83 S.Ct. 1417, 1419, 10 L.Ed.2d 663 (1963).[8]

■ This leaves respondent's contention that the voir dire transcript adequately developed the facts material to petitioner's presumed prejudice claim. In the context of petitioner's presumed prejudice claim, respondent's argument places too much weight on the voir dire transcript. While the voir dire is useful as evidence to determine whether prejudice should be presumed, *see Murphy v. Florida,* 421 U.S. 794, 799–803, 95 S.Ct. 2031, 2035–2037, 44 L.Ed.2d 589 (1975); *Calley v. Callaway,* 519 F.2d 184, 208–09 (5th Cir.1975), *cert. denied,* 425 U.S. 911, 96 S.Ct. 1505, 47 L.Ed.2d 760 (1976), the trial voir dire in this case is not

---

7. Our discussion of television and radio news programs and the presumed prejudice standard is illustrative only. Such evidence might relate not only to presumed prejudice, but also to actual prejudice. Our discussion should not be taken to exclude other evidence petitioner may seek to produce on remand at a hearing on the merits of the change of venue issue.

8. *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963), is the only Supreme Court decision in which prejudice was presumed from pretrial publicity and no other outside influences. In *Rideau,* the defendant confessed to several crimes committed in a Louisiana parish. This confession was videotaped, broadcast three times by a local television station, and seen by 24,000, 52,000, and 29,000 people in the community. 373 U.S. at 724, 83 S.Ct. at 1418. At the time of the trial, the parish had a population of 150,000. 373 U.S. at 724, 83 S.Ct. at 1418. Reviewing defendant's conviction, the Supreme Court held that the trial court's denial of defendant's motion for a change of venue violated the due process clause. The *Rideau* Court stated:

> For anyone who has ever watched television the conclusion cannot be avoided that this spectacle, to the tens of thousands of people who saw and heard it, in a very real sense *was* Rideau's trial—at which he pleaded guilty to murder. Any subsequent court proceedings in a community so pervasively exposed to such a spectacle could be but a hollow formality.

373 U.S. at 726, 83 S.Ct. at 1419 (emphasis in original).

conclusive evidence of the absence of prejudice. In *Rideau v. Louisiana,* the Court noted that three jurors who decided the case (the defendant was convicted and sentenced to death) had seen the televised confession, 373 U.S. at 725, 83 S.Ct. at 1418–19, but the Court was willing to presume prejudice "without pausing to examine a particularized transcript of the voir dire examination of the members of the jury." 373 U.S. at 727, 83 S.Ct. at 1419–20. It would be exceedingly difficult for us to consider *Rideau's* application to the instant case by relying on the voir dire transcript in the absence of a well-rounded description of the local television and radio coverage.

Petitioner's motion for discovery in the district court illustrates some sources of facts relevant to this constitutional claim of presumed prejudice. Petitioner sought transcripts of television and radio broadcasts which referred to the case. Petitioner sought to depose the news directors of television stations, radio stations, and newspapers in and around Seminole County.[9] Petitioner also sought to depose other persons whom he claimed had knowledge of the prejudice against petitioner existent in Seminole County during his trial. At the most basic level, the facts that could be

derived from these sources are unquestionably material to petitioner's claim on the change of venue issue. These facts would be crucial in determining the degree to which the publicity was prejudicial and the saturation thereof. The content of and audience for television/radio media's coverage are indeed "indispensable to a fair, rounded, development of the material facts." *Townsend v. Sain,* 372 U.S. at 322, 83 S.Ct. at 762. Petitioner has made the requisite showing of the first element of the *Townsend* standard.

█ Having decided that there are material facts which have not been adequately developed heretofore, we must now determine whether petitioner has demonstrated that the failure to develop these facts was not attributable to petitioner's inexcusable neglect or deliberate bypass. The standard of inexcusable neglect set down in *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), was applied in *Townsend v. Sain,* 372 U.S. at 317, 83 S.Ct. at 759, and this standard applies in evaluating the need for a federal evidentiary hearing. *Thomas v. Zant,* 697 F.2d 977, 981–89 (11th Cir.1983); *Guice v. Fortenberry,* 661 F.2d 496, 506–07 & 507 n. 25.[10]

---

**9.** In the companion case of *Isaacs v. Zant,* No. 82–8017, the district court permitted expansion of the record, including numerous depositions of news media personnel. We anticipate that the district court will order that the instant record be supplemented to include the relevant *Isaacs* depositions. Although this petitioner was not a party to those proceedings, and is not bound by the conduct thereof, in demonstrating "good cause," Rule 6, Rules Governing § 2254 Cases, 28 U.S.C.A. foll. § 2254 (West 1977), for further discovery or depositions of news media personnel, it is reasonable to use the *Isaacs* depositions as the starting point. For example, petitioner might properly be required to show "good cause" to justify any further deposition of a person previously deposed in *Isaacs.* On the other hand, the *Isaacs* depositions fall short of providing a well-rounded description of the local television and radio coverage, and petitioner is clearly entitled to attempt to supplement same. For example, the *Isaacs* record inexplicably failed to include the Georgia Network wire service broadcasts during the relevant time, despite the fact that the tapes thereof were discovered during the deposition of Donald C. Kennedy. Similarly, docu-

ments from the AP wire service and UPI wire service were apparently available, deposition of Donald C. Kennedy, at 19–20, but were inexplicably not made part of the record.

**10.** In *Townsend,* the defendant contested the admissibility of his confession, which he claimed had been illegally coerced by an injection of hyoscine. At the state court proceedings, medical experts inexplicably failed to testify as to the material facts concerning hyoscine, specifically whether it was a truth serum capable of inducing "involuntary" statements. 372 U.S. at 321–22, 83 S.Ct. at 761–62. The Supreme Court concluded that "the medical experts' failure to testify fully cannot realistically be regarded as Townsend's inexcusable default." 372 U.S. at 322, 83 S.Ct. at 762.

In *Guice v. Fortenberry,* the Court required an evidentiary hearing and decided that the failure to develop the material facts was not attributable to defendants' inexcusable neglect. The defendants claimed that blacks were systematically excluded from service as grand jury foremen. The record from state court proceedings did not disclose the number of grand jury foremen selected during the relevant period of

We conclude that petitioner has also made a sufficient showing on the inexcusable neglect-deliberate bypass element. Despite affirmative efforts, petitioner was unable, through no fault of his own, to bring live witnesses to the state habeas hearing. At the time of that hearing, Ga. Code Ann. § 38–801(e) limited the state habeas court's subpoena power by providing that a subpoena for attendance at a hearing or trial could be served only within 150 miles of the hearing or trial situs.[11] The habeas judge rejected petitioner's constitutional attack on that statute. Record on Appeal, at 251–53. Since material witnesses resided more than 150 miles from the location of the state habeas hearing,[12] and since many of these witnesses were hostile and unwilling to testify voluntarily, State Habeas Hearings, vol. I, at 18; id., vol. II, at 22–23, it is clear that petitioner was unable to bring live witnesses to the state habeas hearing. Petitioner was also effectively precluded from obtaining the testimony of such witnesses by oral deposition, because petitioner was indigent and the state habeas court declined to provide funds which would have been necessary to pay a court reporter or stenographer to transcribe such depositions. State Habeas Hearings, vol. I, at 29 & 34–35; id., vol. II, at 22. Although petitioner apparently could have compelled witnesses to answer written interrogatories or to file sworn affidavits,[13] respondent has not argued either in brief or at oral argument that petitioner's failure to pursue such alternatives, or that any other acts or omissions, constituted inexcusable neglect or deliberate bypass. Moreover, it is uncertain at best whether such methods would have been effective to elicit from hostile witnesses the subtle and complex facts relative to the degree of prejudice in the community at the time of the trial. Under the particular circumstances of this case, the failure to adduce the missing material facts "cannot realistically be regarded as . . . [petitioner's] inexcusable default." *Townsend v. Sain,* 372 U.S. at 322, 83 S.Ct. at 762.

Having satisfied both elements of the *Townsend* standard, petitioner is entitled to an evidentiary hearing on the change of venue issue.

The most serious issue raised by petitioner is the change of venue issue above discussed. However, petitioner also requested the district court to conduct an evidentiary hearing on two other issues, namely, whether petitioner was denied effective assistance of counsel and whether the special prosecutor's participation in the trial deprived petitioner of his constitutional rights. Although petitioner's entitlement to an evidentiary hearing on these two issues is not as clear as it is with respect to the change of venue issue, the showing is sufficient and we direct that the parties be permitted, if they desire, to present evidence at the evidentiary hearing on these two issues also. This panel will retain jurisdiction of this case, and upon certification to us of the findings and record on remand, will decide all the issues in this case.[14]

---

time, and this fact was deemed material. The en banc court decided that there was no inexcusable neglect for three reasons. First, the record did not explain the defendants' neglect to develop the facts. Second, there was no credible allegation that the defendants left the evidence undeveloped for tactical reasons. Third, it appeared as if the defendants and their attorneys simply did not appreciate the relevance of the missing facts. 661 F.2d at 507. *See Thomas v. Zant,* 697 F.2d at 981–86, for a full discussion of the inexcusable neglect-deliberate bypass standard.

11. In 1980, the Georgia state legislature repealed the 150-mile limitation and provided for statewide service of subpoenas. *See* Ga.Code Ann. § 24–10–21 (West 1982).

12. Donalsonville, Georgia, the location of the trial, is well over 150 miles from Reidsville, Georgia, the location of the state habeas hearing.

13. Ga.Code Ann. §§ 38–2401, 38–2402 (1980).

14. In addition to the issues involving change of venue, effective assistance of counsel, and the special prosecutor's participation, the petitioner has raised three other issues: (1) whether the Constitution required the state trial judge's disqualification because he was the special prosecutor's uncle; (2) whether the trial court's jury instructions impermissibly shifted the burden of proof on intent and malice from the state to the defendant in violation of the Four-

For the reasons stated, we retain jurisdiction and remand for an evidentiary hearing.[15]  The district court shall certify its findings and the record of its proceedings on remand to us within 60 days of the issuance of this opinion.

REMANDED WITH INSTRUCTIONS.

teenth Amendment's due process clause; and (3) whether the trial court's sentencing instructions adequately informed the jury as to its duty to consider mitigating circumstances.

15. Petitioner is "entitled to careful consideration and plenary processing" of his claims "including full opportunity for presentation of the relevant facts."  *Harris v. Nelson,* 394 U.S. 286, 298, 89 S.Ct. 1082, 1090, 22 L.Ed.2d 281 (1969). In view of the "demand for speed, flexibility, and simplicity," *Hensley v. Municipal Court,* 411 U.S. 345, 350, 93 S.Ct. 1571, 1574, 36 L.Ed.2d 294 (1973), petitioner shall proceed promptly to expedite the hearing and submit a prompt request for discovery if desired.