For the reasons discussed above, the decision of the district court is AFFIRMED.

Joyce Lisa CUMMINGS,
Petitioner–Appellant,

v.

Richard L. DUGGER and Robert A. Butterworth, Respondents–Appellees.

No. 87–3787.

United States Court of Appeals,
Eleventh Circuit.

Jan. 12, 1989.

Before JOHNSON and CLARK, Circuit Judges, and ZLOCH *, District Judge.

JOHNSON, Circuit Judge:

Joyce Lisa Cummings seeks federal habeas corpus relief pursuant to 28 U.S.C.A. § 2254. We affirm the district court's denial of relief.

I.

Cummings was employed by John Bradford at an optical laboratory that he owned. While working at the lab, she became friendly with his wife, Priscilla Bradford, and Janice Gould. Cummings and Gould became aware that Priscilla was being physically abused by her husband John and agreed to help Priscilla plan his murder. Although a number of plans were considered,[1] the women ultimately decided to help Priscilla attack John when he returned home for dinner one night. They then agreed to help Priscilla inflict bruises on herself so that she could claim she acted in self-defense.

On the evening of March 28, 1980, Cummings, Gould, Priscilla and Eden Bradford (Priscilla's 14 year old daughter by a previous marriage) met at the Bradford's house to execute the plan. The four women waited for John to arrive, attacked him with various kitchen implements, and beat him to death. Priscilla then called the police as planned, claiming she had acted in self-defense. All four women were eventually arrested and charged with the murder of John Bradford.[2] Because there was little evidence that Cummings had actually beaten John,[3] the state relied on the theory of vicarious liability to hold Cummings responsible with the others for the killing.

Jake Arbes, Atlanta, Ga., for petitioner-appellant.

Robert Butterworth, Atty. Gen., Sean Daly, Asst. Atty. Gen., Daytona Beach, Fla., for respondents-appellees.

---

* Honorable William J. Zloch, U.S. District Judge for the Southern District of Florida, sitting by designation.

1. Cummings was intimately involved with Gould and Priscilla in the planning and execution of earlier murder attempts against John. At one point, Priscilla loaned Cummings a rifle which Cummings planned to use on John. Later, Cummings plotted with Gould and Priscilla to place an overdose of drugs in John's orange juice. Cummings purchased the drugs and helped prepare the orange juice that Priscilla then offered to John.

2. Priscilla pled guilty to her husband's murder. Eden was granted immunity in exchange for her testimony at Cummings' trial.

3. Eden heard Cummings encouraging the others but did not actually see Cummings inflict any blows.

From the time of the murder through Cummings' trial, the case, which was dubbed the "Skillet Slaying" and the "Frying Pan Murder" by the news media, generated extensive pretrial publicity. The newspaper and television coverage included details of the murder, alleged statements made to cellmates by the four women, an alleged plot to kill a state witness, and confessions made by the other defendants.

In light of this publicity, Cummings moved for a change of venue from Titusville in Brevard County, Florida, the place of the murder. The motion was granted and the trial was moved to Sanford in Seminole County, Florida, approximately forty miles inland from Titusville.

When the pretrial publicity continued in Sanford, Cummings moved for a second change of venue. The state trial judge reserved ruling on this motion pending initial voir dire of prospective jurors.[4] The trial judge then questioned forty-one potential jurors individually, and dismissed three. Of the remaining thirty-eight jurors, thirty were familiar with the case. The judge then denied the motion for change of venue and allowed the attorneys to proceed with collective voir dire. Of the twelve jurors who were finally chosen, eleven had been exposed to varying degrees of pretrial publicity.

The jury found Cummings guilty of first degree murder and conspiracy to commit first degree murder. She was sentenced to life imprisonment with a minimum mandatory sentence of twenty five years and to a consecutive fifteen year sentence for conspiracy. On direct appeal, she challenged the denial of her motion for change of venue. The state appellate court affirmed her conviction. Subsequently, the state ap-

pellate court denied her state habeas petition, which was based on an ineffective assistance of counsel claim.

She then filed a federal habeas petition, challenging the denial of her second motion for change of venue in federal district court.[5] The district court denied her petition. On appeal, she makes two claims, both based on the effect of pretrial publicity on the jury venire. She claims that her Sixth Amendment right to an impartial jury and her Fourteenth Amendment right to due process were violated in two ways: by the way the trial judge conducted voir dire and by the denial of her second change of venue motion. We will address these claims in turn.

## II.

■ Cummings' first claim is that the judge conducted constitutionally inadequate voir dire with the result that he was unable to detect the potential prejudice of the individual jurors arising from the pretrial publicity. *Jordan v. Lippman,* 763 F.2d 1265, 1275 (11th Cir.1985) ("[R]elief is required where there is a significant possibility of prejudice plus inadequate voir dire to unearth such potential prejudice in the jury pool.").[6] As a threshold matter, the state challenges this claim as procedurally barred because it alleges Cummings did not specifically raise this claim in any previous state court proceedings. We find no procedural default as to this claim.

The procedural default doctrine ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor,* 404 U.S. 270, 276, 92 S.Ct.

---

**4.** Cummings also filed motions for additional peremptory challenges, individual voir dire of prospective jurors, and sequestration of the jury. These motions were denied.

**5.** Cummings also raised an ineffective assistance of counsel claim which she does not raise here.

**6.** We note that the district court did address this claim, but it did so when addressing the change of venue motion and Cummings' allegation of "presumed prejudice." This Court has assumed,

in a recent opinion, that voir dire, conducted in an effective manner, may be sufficient to rebut the presumption of prejudice arising from a community saturated with negative pretrial publicity. *Coleman v. Kemp,* 778 F.2d 1487, 1541 & n. 25 (11th Cir.1985), *cert. denied,* 476 U.S. 1164, 106 S.Ct. 2289, 90 L.Ed.2d 730 (1986). However, the district court did not find the community in which the trial was held saturated with negative publicity. Further, the court found the voir dire was sufficient to root out any partial members of the venire.

509, 512, 30 L.Ed.2d 438 (1971). To avoid procedural default, the defendant must have presented in his state appeal more than just the facts necessary to support his federal constitutional claim: "The *substance* of a federal habeas corpus claim must first be presented to the state courts." *Id.* at 278, 92 S.Ct. at 513–14 (emphasis added); *see Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (quoting *Picard*). However, the Supreme Court has also indicated that courts should exercise flexibility in determining whether defendants have met this requirement. *Picard,* 404 U.S. at 278, 92 S.Ct. at 513–14; *see Mattox v. Dugger,* 839 F.2d 1523, 1524 (11th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 92, 102 L.Ed.2d 68 (1988) (defendant need not "[label] his original claims as 'federal' constitutional ones"); *Osborne v. Wainwright,* 720 F.2d 1237, 1239 (11th Cir.1983) (specific words not necessary so long as state court has "adequate opportunity to consider a party's objection").

In this case, Cummings argued on direct appeal in state court that the trial court abused its discretion in denying her motion for change of venue. In her state appellate brief, Cummings specifically objected to the trial court's denial of her motion for individual voir dire in light of the prejudicial nature of the pretrial publicity and the effect it might have had on the venire. Although Cummings did not specifically state her federal constitutional claims, she repeatedly cited *Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). In *Murphy,* the Supreme Court discussed a defendant's claim that he had been denied due process because he was tried by an allegedly partial jury. Although *Murphy* focused on what the jurors said during voir dire rather than how it was conducted, the Supreme Court was concerned with the effect of pretrial publicity on the ability of the jury to remain impartial during the trial and with the potential violation of the defendant's constitutional rights in the choice of jurors.[7] Having presented her claim in this way, she has provided the state courts with an opportunity to review the manner in which the voir dire was conducted as well as the substantive responses given by individual venire persons. *Cf. Hutchins v. Wainwright,* 715 F.2d 512, 519 (11th Cir.1983), *cert. denied,* 465 U.S. 1071, 104 S.Ct. 1427, 79 L.Ed.2d 751 (1984) (issue "obliquely stated" on direct appeal not defaulted if state court was alerted to constitutional issue).

Having ascertained that the claim is not procedurally barred, we turn to the merits. The conduct of voir dire is a matter entrusted to the broad discretion of the trial judge. *United States v. Tegzes,* 715 F.2d 505, 507 (11th Cir.1983); *United States v. Holman,* 680 F.2d 1340, 1344 (11th Cir. 1982); *see also United States v. Gerald,* 624 F.2d 1291, 1296 (5th Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1369, 67 L.Ed.2d 348 (1981) (noting that Fed.R. Crim.P. 24(a) has been interpreted to give trial court broad discretion in deciding method of jury voir dire). "The standard for evaluating the district court's exercise of its discretion is whether the procedure used for testing juror impartiality created 'a reasonable assurance that prejudice of the jurors would be discovered if present.'" *Tegzes,* 715 F.2d at 507 (citing *Holman,* 680 F.2d at 1344); *Gerald,* 624 F.2d at 1296.

However, the discretion afforded the trial judge to conduct voir dire as he sees fit must be bounded by protection of the defendant's constitutional rights, especially in a situation of extensive pretrial publicity. *United States v. Gerald,* 624 F.2d at 1295. For example, in *United States v. Davis,* 583 F.2d 190 (5th Cir.1978), the former Fifth Circuit reversed the conviction of a defendant who had been the subject of extensive pretrial publicity. The Court held that, in a case where all the jurors had been exposed to some pretrial publicity, simply asking members of the jury venire

---

7. Put another way, the state court was made aware that Cummings was challenging not only the impartiality of individual jurors as revealed in voir dire but also the effect the statements of individual jurors may have had on other potential jurors when the statements were made in a collective setting.

to indicate by a show of hands whether the publicity would impair their ability to render an impartial decision did not adequately protect the defendant's constitutional rights. *Id.* at 196.

■ The preferred approach in such cases, as discussed in *Davis*, is to conduct individual examination of the jurors. *Id.* at 196–98 (citing ABA Standards Relating to Fair Trial and Free Press, which recommends individual voir dire in these cases); *Coleman v. Kemp*, 778 F.2d at 1542 (citing ABA Standards with approval); *Calley v. Callaway*, 519 F.2d 184, 208–09 (5th Cir. 1975), *cert. denied*, 425 U.S. 911, 96 S.Ct. 1505, 47 L.Ed.2d 760 (1976) (juror statements as to impartiality made more credible by conduct of individual voir dire). Individual voir dire allows the trial court to probe the effect of any adverse publicity on the juror and insulates the jurors from one another's prejudicial comments. However, the *Davis* court did not go so far as to require individual voir dire in cases of pretrial publicity: "Though separate examination of jurors is sometimes preferable, it is not necessarily required. We recognize the district court's need for flexibility in interrogating jurors as to possible prejudice." *Davis*, 583 F.2d at 197 (footnotes omitted).

Recently, this Court cited *Davis* with approval in addressing the issue of allegedly inadequate voir dire. In *Jordan*, extensive publicity surrounded a civil rights march on the weekend prior to the start of the trial in which a black inmate was charged in connection with a prison riot. After finding that there was a significant possibility of racial prejudice arising from the coverage of the protest march, this Court concluded the trial judge had abused his discretion by refusing to inquire as to whether each juror had been exposed to the publicity prior to the start of the trial. The Court noted that, in situations of potential prejudice, the jurors must be questioned individually about whether they have been exposed to pretrial publicity and to what degree it has affected their decisionmaking

ability. *Jordan*, 763 F.2d at 1281; *accord United States v. Herring*, 568 F.2d 1099, 1106 (5th Cir.1978).

■ In the case at bar, the trial judge refused to grant Cummings' motion for individual voir dire, but he did agree to screen the jurors individually before the collective questioning of the venire was conducted. Each of the forty-one prospective jurors was brought into the courtroom and asked two questions.[8] First, after briefly describing the case, the judge asked whether the juror had "heard anything about this particular case or read about it in the newspaper." He then asked whether the juror could "base any verdict you render solely on [the testimony presented in court] without any outside influence from anything you might have read in the newspaper or seen on TV." When he received tentative answers, he continued asking questions about the juror's ability to remain impartial. The judge excused three of the forty-one jurors for cause. Of the remaining group, thirty had some exposure to pretrial publicity, although in most cases the exposure was quite minor.

Given these results from his initial screening, the judge denied Cummings' second motion for change of venue. He then allowed both the prosecutor and defense counsel to question a panel of twelve jurors collectively and to exercise peremptory challenges. Cummings alleges that, during this phase of the voir dire, potential jurors who had been influenced by the pretrial publicity were able to "infect" the rest of the venire by exposing them to prejudicial information gleaned from the media. However, as Cummings conceded at oral argument, the only information revealed by the jurors who had been exposed to the publicity was that one of the other women charged had pled guilty and that Cummings had been present at the scene of the crime. The members of the venire who were subject to questioning were asked twice, once by the prosecutor and once by defense counsel, whether they could reach

---

8. It appears from the record that these questions were among those requested by defense counsel. Voir Dire Transcript at 17.

a verdict based solely on what was presented in court. The jurors thus were reminded of the importance of impartiality and were given an opportunity to discuss any doubts they had about their ability to remain impartial. In light of these facts, we cannot conclude that the trial judge so abused his discretion in limiting the individual voir dire as to render the process of jury selection constitutionally deficient.

### III.

■ Cummings next claims that the trial court erred in denying her second change of venue motion.[9] The standards governing change of venue "derive from the Fourteenth Amendment's due process clause, which safeguards a defendant's Sixth Amendment right to be tried by 'a panel of impartial, indifferent jurors.'" *Coleman v. Kemp*, 778 F.2d at 1489 (citing *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642–43, 6 L.Ed.2d 751 (1961)); *Coleman v. Zant*, 708 F.2d 541, 544 (11th Cir.1983). If pretrial publicity is so prejudicial and inflammatory as to preclude the selection of an impartial jury, due process requires a change of venue or a continuance. *Rideau v. Louisiana*, 373 U.S. 723, 726, 83 S.Ct. 1417, 1419, 10 L.Ed.2d 663 (1963); *Coleman v. Zant*, 708 F.2d at 544. Cummings is essentially making a due process claim that pretrial publicity caused her trial to be fundamentally unfair. *Murphy*, 421 U.S. at 799, 95 S.Ct. at 2035–36.

■ This Court has articulated two standards for evaluating change of venue requests based on allegations of pretrial publicity—actual prejudice and presumed prejudice. In *Coleman v. Zant*, the Court described the standards in this way:

> To find the existence of actual prejudice, two basic prerequisites must be satisfied. First, it must be shown that one or more jurors who decided the case entertained an opinion, before hearing the evidence adduced at trial, that the defendant was guilty. *Irvin v. Dowd*, 366 U.S. at 727, 81 S.Ct. at 1645. Second, these jurors, it

must be determined, could not have laid aside these preformed opinions and "render[ed] a verdict based on the evidence presented in court." *Irvin v. Dowd*, 366 U.S. at 723, 81 S.Ct. at 1643.

> Prejudice is presumed from pretrial publicity when (1) pretrial publicity is sufficiently prejudicial and inflammatory, and (2) the prejudicial pretrial publicity saturated the community where the trials were held. *Rideau v. Louisiana*, 373 U.S. at 726–27, 83 S.Ct. at 1419–20; *Murphy v. Florida*, 421 U.S. at 798–99, 95 S.Ct. at 2035–36.

708 F.2d at 544–45. The defendant bears the burden of demonstrating either type of prejudice. *Murphy*, 421 U.S. at 803, 95 S.Ct. at 2039; *Coleman v. Zant*, 708 F.2d at 545. When an appellant claims actual prejudice, the trial court's finding of impartiality should be overturned only if the reviewing court finds "manifest error." *Patton v. Yount*, 467 U.S. 1025, 1031, 104 S.Ct. 2885, 2888–89, 81 L.Ed.2d 847 (1984). Although the Supreme Court has not directly addressed the standard of review for a claim of presumed prejudice, this Circuit has treated the standard as a mixed question of fact and law. *Coleman v. Kemp*, 778 F.2d at 1537 & n. 17.

### A. *Actual Prejudice*

■ The standard established by the Supreme Court is not that a juror be "totally ignorant of the facts and issues involved," but that he be able to "lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin*, 366 U.S. at 722–23, 81 S.Ct. at 1642–43. An individual juror's statement that he or she can remain impartial and put aside any prior opinions must be examined in light of the entire process of voir dire. *Patton v. Yount*, 467 U.S. at 1031, 104 S.Ct. at 2888–89; *compare Irvin*, 366 U.S. at 727–28, 81 S.Ct. at 1645–46 (in situation where negative publicity permeated community, eight of twelve jurors expressed opinion that defendant was guilty, and some admitted it

---

**9.** Both parties agree that this claim was presented on direct appeal in state court and that it is

not procedurally barred.

would take evidence to overcome that opinion, then statements that jurors would be fair and impartial to defendant were not determinative) *with Murphy*, 421 U.S. at 802–03, 95 S.Ct. at 2038–39 ("indicia of impartiality might be disregarded in a case where the general atmosphere in the community or courtroom is sufficiently inflammatory," but not when pretrial publicity is limited and largely factual in nature and fewer than half prospective jurors had opinion as to defendant's guilt). However, deference must be paid to the trial judge's decision regarding the partiality of an individual juror because of the credibility determination involved. *See Patton*, 467 U.S. at 1031 n. 7, 104 S.Ct. at 2888–89 n. 7 (presumption of correctness in federal habeas proceedings for state court factual findings underlies reviewing court's "manifest error" standard of review).

10. The text of Cooper's voir dire testimony is as follows:

THE COURT: Have you read anything in the newspaper or saw [sic] anything on TV concerning this particular case?

MS. COOPER: Yes, sir.

THE COURT: All right. Can you disregard what you have seen on TV and read in the newspapers and base any verdict that you might render solely on the testimony as it is given to you in this case and that alone, or would you be influenced by anything you might have read outside the Courtroom?

MS. COOPER: I really don't know if I could rule out all of it or not. It's possible, but I can't give you a definite yes or no.

THE COURT: You understand that the Defendant, every criminal case is presumed innocent until their guilt is established by the evidence to the exclusion and beyond every reasonable doubt?

MS. COOPER: Right.

THE COURT: You think you have been so influenced by the newspaper or TV that you could not give the Defendant that presumption of innocence at this time?

MS. COOPER: I don't know. I have never been a juror before.

THE COURT: Well, I know most people ... you would be surprised, very few people have been jurors in the past. But you recognize what I am saying that the Defendant is presumed to be innocent, every person accused of a crime is presumed to be innocent?

MS. COOPER: Right.

THE COURT: And, you know, not to be tried in the newspaper. Newspapers report as they see them [sic] and things that they have heard and information they receive.

MS. COOPER: You can't believe everything that you read.

Of the twelve jurors who rendered the verdict in this case, eleven had been exposed to pretrial publicity to some degree. Cummings focuses on jurors Cooper and Sapp, and cites their voir dire testimony as evidence of their alleged impartiality. Under *Irvin*, this evidence must demonstrate that the jurors in question entertained an opinion before the trial that Cummings was guilty and that these jurors could not have laid these opinions aside to render a verdict based solely on the evidence presented.

Juror Cooper, while admitting that she was not sure she could completely clear her mind of the media coverage she had been exposed to, stated that she had formed no opinion as to Cummings' guilt and that she was ready to assume Cummings was innocent until proven guilty.[10] Juror Sapp, after initially stating that he could render a

THE COURT: Right. But do you think that you are, your reading the newspapers or watching TV has tainted that presumption of innocence at all?

MS. COOPER: Well, I really think they are innocent until proven guilty.

THE COURT: Well, that is the main thing.

MS. COOPER: I read in the newspaper, I cannot say they're guilty from the paper.

THE COURT: Because that is the main thing we are looking for is people who will come up here, disregarding everything that has been in the newspaper and TV and rely solely on the evidence as it is presented to you in the case, because it's the State's duty to prove the Defendant guilty beyond a reasonable doubt according to the law the Court will instruct you at the close of the trial.

MS. COOPER: I will try to do that.

THE COURT: All right. Thank you.

Voir Dire Transcript at 37–39. Later, she was questioned by defense counsel:

MS. BICKERSTAFF: Ms. Cooper, there was a little pause when Mr. Robinson asked you about whether you felt you could put out of your mind everything you may have heard about this case before. Are you at all unsure on [sic] that?

MS. COOPER: I am not sure I can put it completely out of my mind, no.

MS. BICKERSTAFF: As a result of what you may have heard, have you formed any opinion with regard to the guilt or innocence of Joyce Cummings?

MS. COOPER: No.

MS. BICKERSTAFF: All right. Do you feel that you can follow the Judge's instructions with regard to the applicable law in this case and that you can be fair to both sides in the case?

verdict without being influenced by the prior publicity he had seen,[11] later admitted that he had formed an opinion that Cummings was guilty. However, he also stated that he could put this opinion out of his mind and decide Cummings' guilt or innocence based on the evidence presented.[12] Given our review of the record, we cannot conclude that the trial court committed manifest error.

## B. *Presumed Prejudice*

The presumed prejudice standard involves two prongs—the pretrial publicity must be sufficiently prejudicial and inflammatory and the publicity must have saturated the community where the trial was held. *Coleman v. Zant*, 708 F.2d at 544. Relief is granted under this standard only in extreme situations. *Coleman v. Kemp*, 778 F.2d at 1537.

After reviewing the news articles, affidavits and video cassettes filed in this case,[13] and after conducting an evidentiary hearing on the issue, the district court found that Cummings had failed to introduce enough evidence for the court to presume prejudice from the pretrial publicity. The court found that the reports contained primarily factual accounts of the circumstances surrounding Bradford's death and that none of the publicity was calculated to provoke hostility.[14] *See Murphy*, 421 U.S. at 802, 95 S.Ct. at 2038–39 (news articles did not create inflamed community atmosphere when largely factual in nature). The evidence presented to the district court included eleven articles from the *Sentinel Star*, the local Sanford County paper. These articles had been published over a three month period and only some of them specifically refer to Cummings by name. *Compare Rideau v. Louisiana*, 373 U.S. at 726, 83 S.Ct. at 1419–20 (defendant's televised

---

MS. COOPER: Yes.

MS. BICKERSTAFF: You feel you can do that despite what you may have learned or come across before you came today?

MS. COOPER: Yes.

Voir Dire Transcript at 219–20.

**11.** Sapp answered the trial judge's initial inquiries about his ability to be impartial in the affirmative. Voir Dire Transcript at 66–67.

**12.** Sapp's testimony when questioned by the defense counsel was as follows:

MS. BICKERSTAFF: If I recall, you don't know very much about this case anyway.

MR. SAPP: Just what I heard and read in the paper and on TV.

MS. BICKERSTAFF: As a result of what you heard or read, did you form any type of opinion with regard to the guilt or innocence?

MR. SAPP: I just formed the opinion on what I heard and I heard, you know, what happened about the people and that was it.

MS. BICKERSTAFF: Could you tell me?

MR. SAPP: I assume they were guilty ... just about the wife hitting her husband with a frying pan and the other people helping her.

MS. BICKERSTAFF: When you say you assume they were guilty ...

MR. SAPP: Right, but the media by saying ...

MS. BICKERSTAFF: Do you, have you carried that assumption with you into the Courtroom today?

MR. SAPP: To a certain extent I have, yes. I have to say I have.

MS. BICKERSTAFF: Do you feel that Joyce Cummings might have some burden to over-

come with regard to you and your feelings at this time?

MR. SAPP: No. I think I have an open mind. I could listen to the facts.

MS. BICKERSTAFF: Do you think you can completely put out of your mind anything you may have seen or read or heard prior to coming here today?

MR. SAPP: Yes.

MS. BICKERSTAFF: That you can deliberate on the guilt or innocence of Joyce Cummings based on what you hear here in the Courtroom and the law as Judge Woodson instructs you?

MR. SAPP: Yes.

MS. BICKERSTAFF: Do you have any reasons, sir, why it would be a hardship for you to sit in this jury?

MR. SAPP: No.

MS. BICKERSTAFF: All right. Thank you.

Voir Dire Transcript at 258–59.

**13.** The state argues that the district court improperly allowed Cummings to supplement the evidence actually presented to the trial court in support of the second motion for change of venue. The issue does not have to be addressed by this Court in light of the fact that, even with this supplemental evidence, Cummings is not able to meet the "presumed prejudice" burden.

**14.** The court suggested that it was aware of other media coverage of the case not included in the submitted materials, but how extensive this coverage was is unclear. The court limited its consideration to the documents and tapes before it.

confession seen by large part of community raises presumption of prejudice) *and Coleman v. Kemp,* 778 F.2d at 1538 (repetitious news coverage containing hostile bias against defendant created "overwhelming showing in the press of [defendant's] guilt before his trial ever began"). We agree with the trial court that Cummings has failed to meet the extensive evidentiary showing required to warrant relief under the presumed prejudice standard.

### IV.

We conclude that, although her challenge to the manner in which voir dire was conducted is not procedurally barred, Cummings has not shown that the trial judge conducted voir dire in such a manner that potential prejudice in the juror's beliefs went undetected. Further, Cummings has not demonstrated actual or presumed prejudice that rendered the denial of her second change of venue motion a violation of her Sixth and Fourteenth Amendment rights to an impartial jury. We therefore AFFIRM the district court.